# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-1621(E)

William R. Young, Appellant,

v.

Eric K. Shinseki,
Secretary of Veterans Affairs, Appellee.

Before KASOLD, *Chief Judge*, and HAGEL, MOORMAN,
LANCE, DAVIS, and SCHOELEN, *Judges*.

# O R D E R

Veteran William R. Young appealed through counsel a March 19, 2009, decision of the Board of Veterans' Appeals (Board) that denied entitlement to VA disability benefits based on post-traumatic stress disorder (PTSD) and referred the issue of entitlement to VA benefits based on a generalized anxiety disorder. On June 30, 2010, the Court issued a memorandum decision modifying the Board decision to reflect a remand to a VA regional office (RO), rather than referral, of that part of the claim for disability compensation for a mental condition other than PTSD and, as modified, affirmed the decision. *Young v. Shinseki*, No. 09-1621, 2010 WL 2640592, at *1 (Vet. App. June 30, 2010).

Subsequently, Mr. Young applied, pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), for an award of attorney fees and expenses in the amount of $6,128.87 for 21.37 hours of attorney work, 15.2 hours of nonattorney work, and $3.81 in expenses. The Secretary originally disputed prevailing-party status, contending that Mr. Young did not attain such status in the underlying merits decision. The matter was sent to panel, in accordance with *Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990), and the Court's Internal Operating Procedures (IOPs), secs. I(b)(4) and V(b). Subsequent to panel referral, the Secretary and Mr. Young entered into a joint motion to dismiss the EAJA application based upon a stipulated settlement agreement. Prior to approving the joint motion to dismiss, however, a majority of the panel questioned the Court's underlying jurisdiction over the Board's decision to refer a part of Mr. Young's claim for VA benefits for a mental disability other than PTSD.[1] *See Johnson (Anne) v. Brown*, 7 Vet.App. 25, 27 (1994) (noting that jurisdiction may be raised at any stage of a proceeding and stating that "a federal court

---

[1] Our dissenting colleague's poem suggesting that the Court affirmatively sought to expand its jurisdiction is unfounded. Mr. Young filed his appeal after receiving notice that he had a right to appeal; the Secretary concurs with Mr. Young. Moreover, that we have jurisdiction over the underlying appeal and referral action has been well understood since at least *Manlincon v. West*, 12 Vet.App. 238, 240-41 (1999), and is only now questioned by the dissent. Thus, it is the dissent, not the majority, that is striving to redefine our jurisdiction, by diverting what may be handled on appeal to the exclusive route of a petition for extraordinary relief, and then suggesting to prospective petitioners that somehow extraordinary relief might routinely be given.

has the duty to determine its subject matter jurisdiction sua sponte even when the issue has not [ ] been raised by the parties" (citations omitted)).

The Court holds that it has jurisdiction over an appeal of a decision of the Board that denies a part of a claim for benefits and decides to refer, rather than remand, for adjudication another part (or condition) or theory in support of that same claim, and our jurisdiction extends not only to the denied part of the claim but also to the referral decision. We note that the appellant argues that the Court would have jurisdiction over any Board decision to refer a claim, even if no part of the claim was denied; we need not decide that issue today.[2]

Specifically with regard to the underlying appeal, the parties agree, and the Court so holds, that Mr. Young's claim for benefits for PTSD was a claim for VA benefits based on a mental disability that also encompassed a claim for benefits for a generalized anxiety disorder, (i.e., the "alternative current condition[] within the scope of the filed claim"), because the evidence developed during the processing of his claim indicated that the symptoms he complained about were caused by the generalized anxiety disorder and not PTSD. *Clemons v. Shinseki*, 23 Vet.App. 1, 5-6 (2009) (noting that a claimant does "not file a claim to receive benefits only for a particular diagnosis, but for the affliction his [ ] condition, whatever that is, causes him" and holding that a single claim for disability compensation can encompass more than one condition). Mr. Young's case is similar to *Clemons* in that, although Mr. Young had a diagnosis of a mental condition other than PTSD, the Board in Mr. Young's case "failed to weigh and assess the nature of the current condition the appellant suffered when determining the breadth of the claim before it." *Id*. at 6.

Because the Court has jurisdiction over the Board decision denying a part of the claim for benefits for a mental disability, the Court has the authority to "decide all relevant questions of law" that arise with regard to the denied claim, including the propriety of referring, rather than remanding, another part of that claim to the RO. *See* 38 U.S.C. §§ 7252 (Court has "exclusive jurisdiction to review decisions of the Board"); 7261(a)(1) (providing authority for the Court to "decide all relevant questions of law" pertaining to a claim); *Manlincon*, 12 Vet.App. at 240-41 (exercising jurisdiction and vacating Board decision because the Board erred by referring rather than remanding a claim for dependency and indemnity compensation that was in "appellate status").

Our dissenting colleagues' view that the Court lacks jurisdiction over a Board referral fails to appreciate that referral of a matter is appropriate only when the Board lacks jurisdiction over the matter being referred; remand is the appropriate action when the Board has jurisdiction over the matter, but further development is needed. *See Godfrey v. Brown,* 7 Vet.App. 398, 410 (1995). It is well settled that the Court has jurisdiction to determine whether the Board had jurisdiction to take the action it takes in a decision. *See King v. Nicholson*, 19 Vet.App. 406, 409 (2006). Moreover, "[o]nce the Board has jurisdiction over a claim, . . . it has the authority to address *all issues* related to that claim, even those not previously decided by the RO." *Jarrell v. Nicholson*, 20 Vet.App. 326,

---

[2] We also note that a claimant may seek reconsideration by the Board Chairman to correct an improper referral. 38 U.S.C. § 7103.

332 (2006) (en banc) (emphasis added); *see also id*. at 335 (where Board lacked *appellate* jurisdiction over request for revision of an RO decision that had not first been presented to and adjudicated by the RO, the appropriate course of action was to *refer* the matter to the RO for adjudication in the first instance); *Garlejo v. Brown*, 10 Vet.App. 229, 232 (1997) (reviewing Board's determination that claimant failed to file a Notice of Disagreement, such that the claim was not in appellate status).

Insofar as our dissenting colleagues suggest that the Court's exercise of jurisdiction over the propriety of the Board's referral action *requires* a claimant to file an appeal from the Board's referral decision or otherwise be precluded from challenging a later effective-date determination, we disagree.[3] The Board's decision to refer, rather than remand, a matter because it had not been adjudicated by the agency of original jurisdiction is a determination that the matter is not in *appellate status* and therefore the Board lacks jurisdiction to review the underlying merits of the matter. Generally, this determination is not an adjudication regarding when the claim was raised for purposes of assignment of an effective date, which is a "downstream issue" that does not become relevant until VA grants the benefit sought. *See* 38 U.S.C. § 5110; *see also Ingram v. Nicholson*, 21 Vet.App. 232, 253-54 (2007) (en banc) (noting that the nature of VA's claims adjudication system often makes it irrelevant to determine when a claim was raised before an effective date is assigned).

Thus, it would be illogical to conclude that the Board's determination that it lacks appellate jurisdiction to address the merits of a matter would preclude a claimant from subsequently litigating the issue of effective date. Whether collateral estoppel, or issue preclusion, applies turns on whether (1) the issue previously adjudicated is identical to the one currently before the Court; (2) the issue

---

[3] It is unclear whether under our dissenting colleagues' view, a claimant would be forced to seek mandamus either to correct an error in a Board decision that reflects referral instead of remand or to expedite the decisionmaking process. If it is the former, then under their view, because the Court lacks jurisdiction over whether the Board referred or remanded a matter, and because mandamus can only be granted in furtherance of the Court's prospective jurisdiction, *see Ebert v. Brown*, 4 Vet.App. 434 (1993), mandamus would never be appropriate, and relief would never be forthcoming. If mandamus is sought for the latter, i.e., to expedite the decisionmaking process on the merits of the referred matter, such a remedy would be available under both the majority's and the dissent's views. Nonetheless, "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations," *Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*, 426 U.S. 394, 402 (1976), and it is unclear at what point the Secretary's failure to provide expedited review would constitute "an arbitrary refusal to act" warranting mandamus. *Compare Costanza v. West*, 12 Vet.App. 133, 134 (1999) (per curium order) (addressing an 11-month delay and finding the petitioner did not demonstrate that he lacked alternative means of relief when he did not undertake to resolve delay prior to the filing the petition), *with Erspamer v. Derwinski*, 1 Vet.App. 3, 11 (addressing a three-year delay and finding petitioner had no adequate alternative means for relief when she contacted the RO more than 30 times before filing her petition with the Court).

Finally, reference by our dissenting colleagues to the time it takes to process an appeal versus a petition is a red herring. A petition for mandamus may be granted only by a panel, and the two petitions decided at panel this past year both took over 300 days. *See* UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS, 2011 ANN. REP., http://www.uscourts.cavc.gov/annual_report/ (88 petitions denied, 1 granted); *see also* Internal Operating Procedure, XI (b)(1). Moreover, although numerous petitions were dismissed for mootness after the Secretary took some action, none of those dismissals involved a petition to amend a Board decision referring rather than remanding part of a claim for further adjudication or to enforce expeditious processing under 38 U.S.C. § 5109B of a matter that had been referred instead of remanded."

3

was "actually litigated" in the prior proceeding; (3) the Court's resolution of that issue was necessary to the resulting judgment; and (4) the litigant was fully represented in the prior proceeding. *Mintzmyer v. Dep't of the Interior*, 84 F.3d 419, 423 (Fed. Cir. 1996). Indeed, the Secretary's pleadings in this matter take the position that the Board's decision to refer, rather than remand, a matter would have no preclusive effect on any subsequent effective-date decision. Nonetheless, an improper referral could result in an improper effective date being assigned by an RO because referral connotes that the matter referred is not part of the underlying claim adjudicated by the Board. The error ultimately could be corrected on appeal of the decision awarding the improper effective date, but correction of the improper referral at the earliest possible point in the adjudication could avoid extensive delays in finally adjudicating and resolving the claim.

Significantly, we also note that a determination by the Board to refer, rather than remand, part of the claim denies the claimant the right to expedited adjudication under 38 U.S.C. § 5109B, which, by its own terms, is a right that is applicable only when the Board remands a matter. Thus, when a claim (or a part or theory in support of a claim) erroneously is referred instead of remanded, a claimant loses his statutory right to expedited consideration absent Court correction. *Id.*; *see also Manlincon*, *supra*.

Further, contrary to the dissent's view, the Court's exercise of jurisdiction over the propriety of the referral action does not bar the RO from acting on the *merits* of the referred matter until appellate review is complete. Nor do we perceive any conflict with *Cerullo v. Derwinski*, which held that the Court's jurisdiction over a claim is exclusive. 1 Vet.App. 195 (1991). The basic premise of *Cerullo* is that "[o]nce an appellate body takes jurisdiction over a claim, the lower tribunal may not consider the *same issues*." *Id.* at 197 (emphasis added). The Court's review of the propriety of the referral action is separate and apart from the RO's adjudication of the merits of the referred matter and therefore does not contravene *Cerullo*. As a result, we also do not perceive any conflict with the Court's decision in *Link v. West*, 12 Vet.App. 39, 47 (1998), which held that the Court lacked jurisdiction to address the *merits* of a matter referred to the RO for adjudication. Moreover, our exercise of jurisdiction is consistent with the fact that parts or theories of a claim can be decided finally and subject to appeal to the Court, while other theories or parts of the same claim are remanded to the RO for additional development. *See, e.g.*, *Tyrues v. Shinseki*, 23 Vet.App. 166, 177 (2009) (en banc) (citing cases reflecting a longstanding practice of exercising jurisdiction over theories or parts of a claim), *aff'd*, 631 F.3d 1380, 1383 (Fed. Cir. 2011), *vacated and remanded for reconsideration*, 132 S. Ct. 75 (2011); *see also D'Aries v. Peake*, 22 Vet.App. 97, 101 n.1 (2008) (exercising jurisdiction over appeal of Board decision that denied service connection for cause of veteran's death under 38 U.S.C. § 1310 even while claim for DIC under 38 U.S.C. § 1318 was denied in a separate Board decision and remanded in a separate Court decision).

Finally, in light of statements made by the dissent, we note that the underlying appeal here is not being dismissed as moot. Having found jurisdiction over the underlying appeal, the Court has jurisdiction over the EAJA application, 38 U.S.C. § 7291(a). It is the EAJA application that is the subject of the parties' motion to dismiss. Because, however, the parties have filed a motion to dismiss the EAJA application based upon a settlement of the fee issue, the Court will grant the

motion because the EAJA matter is mooted by the settlement agreement of the parties. *Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990) (Court adopted "as a matter of policy the jurisdictional restrictions of the Article III case or controversy rubric"); *see also Dofflemyer v. Brown*, 4 Vet.App. 339 (1993) (per curiam order) (granting parties' motion to dismiss the EAJA application based on the parties' settlement agreement as to the request for attorney fees (citing *Bond v. Derwinski*, 2 Vet.App. 376, 377 (1992) (stating that "[w]hen there is no case or controversy, or when a once live case or controversy becomes moot, the Court lacks jurisdiction"))).[4]

Upon consideration of the foregoing, it is

ORDERED that the parties' motion to dismiss the appellant's EAJA application is GRANTED.

DATED:   May 24, 2012                                                    PER CURIAM.


LANCE, *Judge*, with whom HAGEL, *Judge*, joins, dissenting:  In this case, a majority of the Court accepts the premise that the Court has appellate jurisdiction over a Board decision that refers a matter to an RO for an initial decision.  Although this order of the en banc court is well meaning, it is legally incorrect, misguided in practice, and works a substantial injustice on veterans, taxpayers, and survivors.

## I.  INTRODUCTION

The infirmity of the majority opinion is simply breathtaking.  The order announces a purportedly limited rule without providing analysis sufficient to support its conclusion.  Rather than identify any statutory basis for its holding, the majority first cites *Clemons v. Shinseki*, 23 Vet.App. 1 (2009), for the proposition that a claim for a benefit generally encompasses all possible diagnoses.  This statement is true but irrelevant.  It says nothing about how to draw a jurisdictional line once the Secretary explicitly bifurcates a claim and considers multiple diagnoses separately.  The majority then states its desired conclusion but provides no directly applicable supporting authority.  Finally, the order asserts that the dissent has failed to appreciate a number of decisions that the majority itself fails to analyze.  In short, rather than coming to a reasoned conclusion based on analysis of the Court's precedent, the majority starts with a predetermined outcome and works backward from it.

---

[4] The dissent's attempt to undermine the binding effect of the majority opinion by suggesting that any discussion of the Court's jurisdiction to review the Board's referral decision is dicta or that granting the parties' joint motion to dismiss requires the Court to overrule *Dofflemyer, supra.*, and *Bond, supra.*, is both confusing and unfounded.  As noted by the dissent, the issue of the Court's jurisdiction over the underlying appeal was first raised by the Court in connection with Mr. Young's EAJA application.  Once raised, it cannot be ignored.  *Clemons*, 23 Vet.App. at 2-3.  Having found jurisdiction over the underlying appeal, the Court does not perceive any conflict with its decision to grant the parties' joint motion to dismiss the EAJA application and the Court's decisions in *Dofflemyer* or *Bond*.  *Dofflemyer* construed the parties' "Joint Motion for Approval of Agreement to Settle Appellant's Claims for Reasonable Attorney Fees and Expenses Under the [EAJA]" as "one for dismissal and . . . grant[ed] the motion."  4 Vet.App. at 339.  In accordance with Rule 42 of the Court's Rules of Practice and Procedure, the Court directed the Clerk to "enter a voluntary dismissal." *Id.*; *see also Friedlund v. Shinseki*, No. 08-1020, 2010 WL 3937345, at *1 (Vet. App. Oct. 8, 2010) (per curiam order) (granting parties' joint motion to terminate the appeal and ordering the appeal "terminated").

5

As discussed below, the Court, by its decision, exercises direct appellate review over an interlocutory decision and, in doing so, ignores two key facts: (1) Interlocutory decisions by the Board are properly considered only through the Court's authority under the All Writs Act (AWA), 28 U.S.C. § 1651(a), and (2) veterans are better served if such errors are corrected promptly though petitions for extraordinary relief in the nature of writs of mandamus. In so doing, the majority loses sight of the injury that Mr. Young sought to remedy by appealing to the Court, i.e., the Board's failure to accord him expedited processing before VA. By requiring Mr. Young and all future appellants to seek this relief through an appeal to the Court rather than through a petition, the majority creates an untenable framework whereby an appellant must needlessly endure months of avoidable processing at the Court to ensure expedited processing below. Neither the law nor common sense supports such an incongruous result.

Although the majority is clearly motivated by what it perceives to be the just result in this case, i.e., providing Mr. Young with the expedited processing of his claim to which he is statutorily entitled, it need not cast aside the venerable principles of finality to obtain that result. Rather, under my view, Mr. Young would have been immediately free to challenge the Board's referral decision through a petition, which would have provided him with expedited processing *more quickly* than a successful appeal to the Court. By focusing only on its desired result without fully considering its consequences, the majority overlooks a legally sound method for obtaining the same remedy that would ultimately be more advantageous to veterans and their survivors. Absent a more thorough discussion, it is entirely unclear why the majority chooses the slowest available method for ensuring "expedited" claims processing.

Before addressing the merits, I note that the issue of the Court's jurisdiction over the underlying subject matter arises no more or less merely because the parties agreed to settle the portion of the case pertaining to the application for attorney fees and expenses. The issue of jurisdiction can be raised at any point in a proceeding by any party or by the Court itself. *Fugere v. Derwinski*, 972 F.2d 331, 334 n.5 (Fed. Cir. 1992); *Clemons*, 23 Vet.App. at 2-3. Here, for example, the issue of jurisdiction over the subject of the underlying appeal was first raised by the Court in connection with Mr. Young's application for attorney fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (EAJA). Once raised, the issue cannot be ignored and the Court cannot rest its decision on the mere agreement of the parties that it has jurisdiction. *Clemons*, 23 Vet.App. at 2-3 (2009). Therefore, to the extent the Court lacks jurisdiction over the merits, it also lacks the authority to ratify a payment of attorney fees and expenses from the U.S. Treasury. *See Heath v. West*, 11 Vet.App. 400, 403-04 (1998) (dismissing the petitioner's EAJA application because of a lack of jurisdiction where the Court concluded that it lacked jurisdiction over the underlying petition).

Moreover, in granting the parties' joint motion to dismiss Mr. Young's EAJA application pursuant to the parties' stipulated agreement, the majority has essentially ignored the U.S. Supreme Court's clear prohibition against exercising jurisdiction by agreement of the parties. As the Supreme Court has succinctly stated: "*[N]o action* of the parties can confer subject matter jurisdiction upon a federal court." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (emphasis added); *see also Mitchell v. Mauer*, 293 U.S. 237, 244 (1934) (jurisdiction cannot be enlarged or conferred by agreement of the parties). Although the majority cites *Bond v.*

6

*Derwinski*, 2 Vet.App. 376, 377 (1992), and *Dofflemyer v. Brown*, 4 Vet.App. 339, 339 (1993), for the proposition that the Secretary's decision to enter into a settlement or stipulated agreement with the appellant "effectively moots the case or controversy" before the Court and therefore deprives the Court of jurisdiction, the majority nevertheless exercises jurisdiction over Mr. Young's EAJA application by granting the parties' joint motion to dismiss. In so doing, the majority is allowing the agreement of the parties on the EAJA matter to supersede the predicate question whether the Court had jurisdiction to review the Board's referral decision in the underlying appeal. In other words, the Court cannot review the parties' agreement with respect to the EAJA matter until it satisfies itself that it had jurisdiction over the underlying appeal. Consequently, the specific rule that the Court cannot exercise jurisdiction simply by agreement of the parties—if only to award fees — trumps the general rule that an agreement of the parties may moot the case or controversy before the Court.

Insofar as the majority concludes that the Court properly exercised jurisdiction over the referral decision, in light of *Bond* and *Dofflemyer* it nevertheless errs in granting the parties' joint motion to dismiss. As explained above, the majority cannot, on the one hand, exercise jurisdiction over the EAJA matter and grant the parties' joint motion to dismiss pursuant to a stipulated agreement, while, on the other hand, hold that such an agreement moots any case or controversy before the Court. *Ante* at __. In the cases cited by the majority to support that disposition, the Court neither granted nor denied the parties' joint motions to dismiss pursuant to the parties' agreements, but rather ordered the Clerk of the Court to enter a voluntary dismissal of the matters pursuant to Rule 42 of the Court's Rules of Practice and Procedure. *See Dofflemyer*, 4 Vet.App. at 339; *Bond*, 2 Vet.App. at 377; *see also* U.S. VET. APP. R. 42 ("On motion of the appellant or petitioner for dismissal, the Clerk may dismiss an appeal, petition, or application for attorney fees and expenses on terms requested by the appellant or petitioner, agreed upon by the parties, or previously fixed by the Court."). Indeed, if the Court lacks jurisdiction over a matter, it necessarily lacks the authority to rule on a motion related to that matter. Therefore, if the majority wishes to place the Court's imprimatur on the parties' stipulated agreement by granting the joint motion to dismiss, it must necessarily overrule *Bond* and *Dofflemyer*. However, if the majority wishes to rule in accordance with the precedent established in those cases and order the Clerk to enter a voluntary dismissal of the EAJA matter, then any discussion of the Court's jurisdiction to review the Board's referral decision is necessarily dicta and not binding in future appeals. *See Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 352 n.12 (2005) ("Dictum settles nothing, even in the Court that utters it."); *see, e.g.*, *Freeman v. Shinseki*, 24 Vet.App. 404, 412 (2011) (holding that dicta in *Willis v. Brown*, 6 Vet.App. 433 (1994), was not controlling); *Parrish v. Shinseki*, 24 Vet.App. 391, 396 (2011) (holding that dicta in *Hilkert v. West*, 12 Vet.App. 145 (1995) (en banc), was not controlling).

## II. REFERRALS ARE NOT "FINAL" DECISIONS OF THE BOARD

### A. Referral Decisions are Generally not Final

As with all inferior Federal courts, this Court is a creature of statute and its authority is limited to that granted by Congress. *See Mayer v. Brown*, 37 F.3d 618, 619-20 (Fed. Cir. 1994) (holding that the Court's "jurisdiction is limited by statute to review of 'decisions of the Board of Veterans' Appeals'" and that 38 U.S.C. § 7261 "does not independently grant jurisdiction over [actions of the Board Chairman]"). Therefore, unlike the majority, I find it necessary to look to the

Court's jurisdictional statute to resolve a question as to the extent of its authority. Pursuant to 38 U.S.C. § 7266(a), the Court is authorized to conduct appellate review only of "final decision[s]" of the Board. This Court has long held that it cannot hear interlocutory appeals or otherwise conduct appellate review of Board decisions that are not final, such as remands, *see*, *e.g.*, *Breeden v. Principi*, 17 Vet.App. 475, 478 (2004), and, relevant to this appeal, referrals, *see Link v. West*, 12 Vet.App. 39, 47 (1998) ("Claims that have been referred by the Board to the RO are not ripe for review by the Court."). In *Jarrell v. Nicholson*, 20 Vet.App. 326 (2006) (en banc), the Court reiterated that it does not have jurisdiction to review a claim absent a final decision by the Board on the claim in dispute.

The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has also been clear in its holdings that this Court's appellate authority is limited to those Board decisions that meet the definition of "final" under 38 U.S.C. § 7266(a). In *Mayer v. Brown*, *supra*, the Federal Circuit held that this Court does not have jurisdiction to review the Board Chairman's decision to deny reconsideration. In *Howard v. Gober*, the Federal Circuit held that this Court does not have jurisdiction to consider a motion to revise a final decision based on clear and unmistakable error (CUE) that was not first decided by the Board. In short, the finality requirement is well established by and firmly entrenched in the Court's jurisprudence.

The question presented in this case is whether a Board decision referring an issue for adjudication by an RO is a "final" decision or is better characterized as an interlocutory decision. *Black's Law Dictionary* defines a "final" judgment as the "the last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs" and notes that under "the final-judgment rule" "a party may appeal only from a . . . final decision that ends the litigation *on the merits*." BLACK'S LAW DICTIONARY 705, 919 (9th ed. 2009) (emphasis added). In contrast, it defines "interlocutory" as "not constituting a final resolution of the whole controversy." *Id.* at 889. It further defines an "interlocutory appeal" as "[a]n appeal that occurs before the trial court's final *ruling on the entire case*." *Id.* at 113 (emphasis added).

### 1. Distinction Between Final and Interlocutory Decisions

The distinction between final and interlocutory Board decisions has two important implications beyond the existence of the Court's appellate authority. First, the Federal Circuit has held en banc that "[p]rinciples of finality and res judicata apply to agency decisions that have not been appealed and become final." *Cook v. Principi*, 318 F.3d 1334, 1337 (Fed. Cir. 2002) (en banc). Thus, if a type of Board decision is categorized as "final," then it is binding on future proceedings if it is not appealed. Therefore, if the Board refers a matter to the RO and the appellant does not challenge that action immediately, the Court will be unable to correct any error on direct appeal of a later effective-date determination because the Board's determination of when the claim was first filed will be beyond the Court's jurisdiction.

Despite the deep unfairness of this result, the majority fails to offer a coherent argument as to how this outcome is not compelled by its decision. Initially, the majority appears to assert that the determination of when a claim was first filed for purposes of determining whether to refer or remand the claim is independent from the same determination for any other purpose. However, collateral estoppel generally prevents any adjudication system from issuing decisions that reach

8

inconsistent conclusions about the same factual issue. Hence, this Court has repeatedly modified decisions to avoid collateral estoppel issues when the Board has made unnecessary findings of finality unfavorable to a claimant. *See Juarez v. Peake*, 21 Vet.App. 537, 544 (2008); *Seri v. Nicholson*, 21 Vet.App. 441, 444-45 (2007). Rather than address *Cook* and the cases cited therein, the majority cites Federal Circuit precedent outside of veterans law pertaining to court litigation to assert that a different test would apply and then fails to explain its application.

Second, where the Court has jurisdiction over a final Board decision, its jurisdiction is exclusive. As the Court noted in *Wachter v. Brown*, "[a] party cannot be in 'two places at the same time.'" 7 Vet.App. 396, 397 (1995) (quoting *Bellsouth Corp. v. FCC*, 17 F.3d 1487, 1489 (D.C. Cir. 1994). This principle prevents VA from making determinations that may conflict with the Court's rulings in the case and vice versa. As a result, the Court has held that the Board lacks jurisdiction to grant a motion for reconsideration as long as the Court has jurisdiction over the decision. *Cerullo v. Derwinski*, 1 Vet.App. 195 (1991). Similarly, the Court held in *Pulac v. Brown*, 10 Vet.App. 11, 12 (1997), that the Court cannot take jurisdiction over an appeal if the appellant filed a motion for reconsideration before filing his Notice of Appeal (NOA). *See also Losh v. Brown*, 6 Vet.App. 87 (1993) (holding that, if an NOA and motion for reconsideration are filed simultaneously, jurisdiction remains with the Board). Therefore, under *Cerullo* and *Pulac*, if the Court has jurisdiction over the Board's decision to "refer" a claim, then the RO may not take any action on that claim until all appeals of the Board decision have been completed and jurisdiction is returned to VA. To hold otherwise allows VA to potentially waste time and resources operating under a mistaken premise as to when a claim was first filed, when the Court can reach a different conclusion.

## 2. VA's Treatment of Referred Matters

Whether the Court has jurisdiction over a Board decision to refer a matter for adjudication by an RO must turn on the undisputed facts as to how VA treats such decisions. First, VA does not consider such decisions to have any res judicata effect on the merits of the referred matter. Second, when a matter is referred to an RO, it commences work on the matter immediately regardless of whether the Board decision ordering the referral has been appealed to this Court. Moreover, neither party argues that VA should treat referred matters differently than it actually does. Nonetheless, the parties argue that the referral decision is a "final" decision. The essence of the parties' argument is that the Board's characterization of its action as a referral instead of a remand has binding effect on how the claim will be processed because it governs the priority that the matter receives in further Agency proceedings.

Unfortunately, the parties' desire to ignore the plain characteristics of the referral decision cannot transform an interlocutory decision into a final one. The parties agree that the only effect of the Court's decision would be on the priority assigned to the processing of the claim by VA. The first flaw in the parties' argument is that the authorities cited above amply demonstrate that a final decision is one that resolves a claim on the merits, while a decision that merely governs how a claim will be processed is an interlocutory one. A Board decision sending a claim back to an RO for additional action on a claim simply cannot be parsed into discrete pieces where every specific determination is classified as a separate decision that can be deemed final if an erroneous determination could have an adverse effect on the processing of the claim. Such a semantics game

9

ignores the plain definitions of "final" and "interlocutory" and essentially swallows the concept of interlocutory actions. This attempt to separate the referral action from the merits would also plainly contradict Federal Circuit precedent interpreting this Court's jurisdiction:

> A "decision'" of the Board, for purposes of the Veterans Court's jurisdiction under section 7252, is the decision with respect to the benefit sought by the veteran: those benefits are either granted (in which case the Secretary of Veterans Affairs (Secretary) is bound by the decision and, under section 7252, may not appeal to the Veterans Court), or they are denied.

*Maggitt v. West*, 202 F.3d 1370, 1375 (Fed. Cir. 2000).

### 3. Majority's Misapplication of Prior Precedent

The majority and the parties cite to *Manlincon v. West*, 12 Vet.App. 238, 240-41 (1999), as an example of a case where the Court reviewed the propriety of a Board decision referring a matter to an RO. However, the question of the Court's jurisdiction to conduct such a review was simply never raised or considered in *Manlincon*. Therefore, *Manlincon* is not binding precedent on the issue presently before the Court. A situation analogous to the present case occurred in *Harms v. Nicholson*, 20 Vet.App. 238 (2006) (en banc), where the appellant argued that a prior ruling on the substance of a matter was precedent that the Court had jurisdiction over the issue. However, the en banc Court flatly rejected this notion and held the decision was not precedent on the issue because the cited decision assumed jurisdiction without explaining why jurisdiction would exist. *Id.* at 245 (citing *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (holding that an issue not "raised in briefs or argument nor discussed in the opinion of the Court" cannot be taken as "a binding precedent on this point"); *Webster v. Fall*, 266 U.S. 507, 511 (1925) (stating that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not considered as having been so decided as to constitute precedents")). Hence, the Court's en banc decision in *Harms* squarely disposes of the argument that *Manlicon* or any similar case purporting to exercise jurisdiction without any express consideration of the issue has precedential value. Therefore, the second half of the majority's first footnote is empty verbiage because it merely asserts that the majority can rely on a case unsupported by any jurisdictional analysis to justify the majority's outcome.

The majority attempts to support its reasoning by citing *King v. Nicholson*, 19 Vet.App. 406 (2006), for the proposition that the Court has jurisdiction to determine whether the Board had jurisdiction. *Ante* at 2. However, *King* actually holds that the Court has jurisdiction to review the Board's determination that it did not have *subject-matter* jurisdiction. 19 Vet.App. at 409. The issue here is not subject-matter jurisdiction, but finality. In this case, the Board did not find that it lacked subject-matter jurisdiction over the referred matter and did not make a final decision refusing to act on that matter. Rather, it made an interlocutory decision to take a particular type of action on the matter. It is inherent in the referral that the Board would not refuse to review the matter, as it did in *King*, if the RO denied the claim. Accordingly, *King* and the other cases where the Court has reviewed a final decision of the Board refusing to act based upon a lack of statutory authority are clearly distinguishable from this decision where the Board made a factual determination as to what

10

action to take. However, by relying on *King*, the majority eviscerates its claim that it is not holding that all referral decisions are final and subject to direct appeal. *Ante* at 2.

### 4. Adverse Impact on Veterans and Survivors

Ultimately, the Court's review of the Board's decision to refer a matter not only ignores the important distinctions between "final" and "interlocutory" actions but also increases the inefficiency of the VA claims process and adversely affects claimants. First, under *Cerullo* and *Pulac*, both *supra*, it is clear that, if the Court asserts jurisdiction over the propriety of a referral decision, VA is barred from acting on the claim until this Court's review is concluded. As explained in more detail below, the delay caused by such review would negate any priority treatment that might ultimately be obtained and, as such, achieve exactly the opposite result than that sought by the parties. Second, determining the scope of a claim prior to its full development may well result in unfavorable decisions where a fuller record would better show that a particular matter is best viewed as part of a larger claim. Third, under *Cook*, a referral decision not appealed to this Court would have to be treated as a binding determination that precludes a contrary determination in a later VA decision absent new and material evidence or a successful collateral attack.

The parties and the majority wish to simply ignore these very real consequences, all of which work to the disadvantage of the veteran in terms of the speed with which the claim is resolved. However, no authority is offered nor exists for the proposition that the Court can strip the defining characteristics of finality from a decision and still call it final. *See Kuzma v. Principi*, 16 Vet.App. 140, 145 (2002) (en banc order) ("An epigram widely attributed to Abraham Lincoln is appropriate in this case: How many legs does a dog have if you count his tail as a leg? Four. You can call a tail a leg if you want to, but it doesn't make it a leg."). Indeed, the majority does not even attempt to address the proper meaning of either "final" or "interlocutory." In addition, it offers no authority for the proposition that the Court can ignore the clear statement by the Federal Circuit in *Maggitt* that a Board "decision" for the purposes of appealing to this Court is the decision on the benefit sought, and the majority recasts every procedural action taken on a case as a "final" decision independent of the merits of the appeal. Such a semantics game would not only obliterate a clearly expressed limitation on the Court's jurisdiction but would also require the Board to issue a full decision supported by reasons or bases and a notice of appellate rights not only each time it refers a matter to an RO, but also each time it assigns a docket number to an appeal. *See* 38 U.S.C. § 7104(d) (defining the statutory requirements "[e]ach decision of the Board shall include"). Again, the majority's interpretation would place unnecessary burdens on the already overwhelmed VA ROs and the Board and would have an adverse effect on the timeliness of claims resolution. *See* BOARD OF VETERANS' APPEALS, REPORT OF THE CHAIRMAN 15 (2012) (stating that 41,005 appeals were pending at the Board at the end of fiscal year 2011); *An Examination of Poorly Performing U.S. Department of Veterans Affairs Regional Offices: Hearing Before the Subcomm. on Disability Assistance and Memorial Affairs of the H. Comm. on Veterans' Affairs*, 112th Cong. 1 (2011) (statement of Rep. Runyan, Subcomm. Chairman) (noting that 809,000 claims were pending at VA ROs in 2011). There is simply no basis for believing that Congress intended this Court's review of the Board's operations to routinely extend to micromanaging the processing of appeals in this manner.

11

Accordingly, the Court cannot divorce the referral decision from the merits of the claim, and the Court should conclude that it lacks jurisdiction to conduct appellate review of that matter until presented with a proper appeal of a final Board decision resolving the merits of the claim. *See Ingram v. Nicholson*, 21 Vet.App. 232, 254 (2007) (the issue of when a claim was first raised can be addressed when, and if, it ever "actually becomes relevant to an award of benefits"). Consequently, because the Court lacked jurisdiction to consider a direct appeal of the Board's referral decision, I conclude that it lacks jurisdiction to consider the EAJA application filed in connection with that appeal and reject the attempt to use the authority of this Court to enforce an EAJA award. *See*, *e.g.*, *Heath*, 11 Vet.App. at 403-04.

## B. The Referral of a Bifurcated Matter

Although it is absolutely clear that the Court generally does not have jurisdiction to review a referral decision, the majority appears willing to make an exception where a claim has been bifurcated and the Court has jurisdiction over the theory of entitlement that was not referred. However, such an exception cannot be justified under the Court's caselaw. In *Tyrues v. Shinseki*, 23 Vet.App. 166 (2009) (en banc), *vacated and remanded for reconsideration*, ___ F. App'x ___, 2012 WL 763143 (Fed. Cir. Jan 5, 2012),[5] this Court granted the Secretary broad discretion to dismember a claim and adjudicate the pieces in jurisdictionally separate proceedings. *See also Locklear v. Shinseki*, 24 Vet.App. 311, 315 (2011) ("Bifurcation of a claim generally is within the Secretary's discretion."). *Tyrues* explicitly held that "this Court's jurisdiction is controlled by whether the Board issued a 'final decision'—i.e., denied relief by either denying a claim *or a specific theory in support of a claim*." 23 Vet.App. at 178 (emphasis added). Thus, *Tyrues* states clearly that the Court's jurisdiction over a dismembered claim extends only to the specific theories that are subject to a final decision.

In applying this holding, *Tyrues* held that the Board decision at issue "was final concerning the issue of . . . direct service connection," but was "preliminary"—i.e., not final—concerning the issue of presumptive service connection, which was remanded by the Board. *Id.* at 180-81. This language makes clear that when the Board bifurcates a claim, the Court has jurisdiction over only the theory or theories that have been finally denied. However, in this case, the majority bootstraps the Court's jurisdiction over a theory denied by the Board and unquestionably before the Court to review a portion of the Board decision that expressly returned part of the claim to the RO for initial consideration, thus keeping that matter within the administrative adjudication process. This bootstrapping violates not only the express language and logic of *Tyrues* but also the common sense notion that, once a matter is bifurcated by the Board, the Court's jurisdiction over the finally decided portion does not give it authority to entertain an interlocutory attack on the portion that is still under consideration by the Agency.

---

[5]The continuing viability of *Tyrues* was not briefed in this case, and the Federal Circuit's decision vacating the Court's decision for reconsideration is not yet final. Therefore, I accept *Tyrues* as controlling for purposes of this decision.

The majority's citation to *Clemons* cannot demonstrate that the Court has jurisdiction over the referral decision. *Clemons* merely stands for the proposition that the default scope of a claim is controlled by the nature of the disability, not any particular diagnosis. 23 Vet.App. at 5. *Clemons* addresses only the scope of the Court's jurisdiction where a claim has not been broken apart. Nothing in *Clemons* provides jurisdiction over the nonfinal portions of a claim that have been bifurcated and sent to the RO for further proceedings. Nevertheless, the majority holds that *Clemons* enables the Court to bestow on itself jurisdiction over those non-final portions of a bifurcated claim by reassembling the claim for the limited purpose of reviewing a referral decision, while simultaneously allowing VA to adjudicate the merits of the nonfinal portions of that claim.

Simply put, in *Tyrues*, the full Court, divided though it was, made it crystal clear that once the Secretary breaks up a claim, the pieces are distinct and separately appealable. In such a situation, the Court's jurisdiction derives not from an appeal of the original claim as a whole, but from an appeal of each theory that is finally decided by the Board. Even when it is readily apparent that the Board's instructions to the RO on the nonfinal portion of a claim are erroneous, the Court simply has no authority to conduct interlocutory review merely because the Court happens to have jurisdiction over a different portion of that claim.

The majority's treatment of *Tyrues*, however, misstates this precedent. The majority cites it as evidence of "a longstanding practice of exercising jurisdiction over theories *or parts of a claim*." *Ante* at 4 (emphasis added). However, the majority offers in its citation to *Tyrues* no support for adding the emphasized language to the citation. In other words, the majority fails to explain how *Tyrues* supports its assertion that the Board's final denial of a theory offered to support a finding of service connection confers jurisdiction on the Court to review a separate theory that the Board referred. There is a substantial difference between a bright-line rule that divides the Court's jurisdiction by theory and a fuzzy assertion that the Court can review whatever "parts" of a Board decision it wishes when a matter has been bifurcated. The net effect of the majority's holding is to grant the Court the ability to extract from a Board decision whatever matters the Court wishes to review, regardless of whether those matters were finally decided by the Board. *Ante* at 3. Thus, it appears that the Court can now review notice, duty-to-assist, and other procedural challenges as to referred or remanded matters so long as it has jurisdiction over a "part" of the claim.

## III. REFERRAL DECISIONS SHOULD BE REVIEWED THROUGH WRITS

To the extent that the Court possesses a limited ability to conduct an interlocutory intervention into a claim being processed by VA, that power exists under the AWA, 28 U.S.C. § 1651(a). *See Cox v. West*, 149 F.3d 1360, 1363-64 (Fed. Cir. 1998). Under that authority, the Court may "'compel action of the Secretary unlawfully withheld or unreasonably delayed." *Ramsey v. Nicholson*, 20 Vet.App. 16, 21 (2006) (quoting 38 U.S.C. § 7261(a)(2)). However, the Court's power under the AWA is limited to extraordinary situations and, of most concern, the Federal Circuit has emphasized that "'extraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay and perhaps unnecessary trial.'" *Lamb v. Principi*, 284 F.3d 1378, 1384 (Fed. Cir. 2002) (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953)). By determining that the Court has jurisdiction to determine whether a remand or referral is appropriate, the majority necessarily removes the remedy of a writ of mandamus from the hands of the appellant.

13

Even setting aside the binding precedent of the Federal Circuit, the difference between this case and review of a final Board decision is illustrated by the Court's decisions in *Ribaudo v. Nicholson*, 20 Vet.App. 552 (2007) (en banc) and *Ramsey*, *supra*. Both cases dealt with arguments that the appeals involved were statutorily entitled to more expeditious treatment. In each case, the Court held that the Chairman of the Board could not unilaterally stay the processing of selected appeals while the Secretary pursued an appeal of a decision of this Court. *Ribaudo*, 20 Vet.App. at 559; *Ramsey*, 20 Vet.App. at 37. However, neither *Ribaudo* nor *Ramsey* was an exercise of direct appellate review. Rather, both cases were decided pursuant to petitions seeking extraordinary relief under the AWA. It is clear from these cases that, if the appellant disputes the priority assigned to the processing of his appeal, the proper vehicle for such a challenge is a petition for extraordinary relief, not a direct appeal.

Using petitions for extraordinary relief is not only the proper tool under the jurisdiction provided to this Court by Congress, it is also the device that provides the best relief for veterans. The risk of harm created by a Board decision to refer a matter instead of remanding it is that the matter will not be processed promptly. Petitions are far superior for addressing time-sensitive matters, as a review of the Court's processing statistics readily and strikingly illustrates. Last year, the median time from the filing of a Notice of Appeal at this Court to disposition of the appeal was 328 days or 10.9 months, while the median time from the filing of a petition to disposition was 54 days or 1.8 months.[6] By concluding that a veteran may challenge a referral decision only through an appeal and not through a petition, the majority forces the veteran to needlessly wait, on average, an additional nine months to obtain expeditious processing of a claim. In essence, the majority would impose, as a matter of law, a necessary and substantial delay to remedy a complaint that a matter was not being processed with the alacrity required by law. This result is particularly inapposite to the legal basis advanced by Mr. Young and relied on by the majority for exercising jurisdiction over the Board's referral decision; namely, that an appeal to the Court is necessary to ensure that VA processes the matter expeditiously. In short, I fail to see how an appeal to the Court, which takes, on average, six times as long to process as a petition, is a better method for ensuring expedited processing.[7]

---

[6]By comparison, the average time it takes for a RO to process a claim is 188 days. DEPARTMENT OF VETERANS AFFAIRS, FISCAL YEAR 2011 PERFORMANCE AND ACCOUNTABILITY REPORT I-69 (2011). Thus, if the Court were to routinely use direct appellate review to address erroneous interlocutory decisions by the Board referring a matter instead of remanding it, it is very likely that the matter will have been decided by the RO prior to the Court's decision.

[7]Although not pursued in this case, the quickest method for correcting the Board's error likely would have been to immediately seek reconsideration at the Board. *See* 38 C.F.R. § 20.1000(a) (2011) (stating that "[r]econsideration of an appellate decision may be accorded at any time by the Board . . . on motion of the appellant or his or her representative" to correct, inter alia, an "obvious error of fact or law"); *see also* 38 U.S.C. § 7103. Where, as here, the Board's error is clear, the Board would have every incentive to correct that error quickly, as it would be in the best interest of the veteran and less costly to the Secretary in terms of manpower, litigation costs, and potential EAJA fees. Reconsideration is available regardless of whether the Court determines that it has jurisdiction

14

It is true that the Court rarely grants a petition for extraordinary relief. However, it should not be assumed from this fact that petitions are an ineffective tool for obtaining relief. The reality is that the Court regularly orders the Secretary to respond to a petition that sets forth a well-pleaded complaint that the processing of a claim has been improperly delayed. When the Court issues such an order, the great majority of the time the Secretary responds by correcting the problem within the short time allotted for a response, and the petition is dismissed as moot because the relief sought has been obtained. Thus, the petition, in practice, is a tool far better than the direct appeal for obtaining expeditious processing of the underlying issue.

In rejecting the petition as the proper tool, the majority compares the 88 petitions denied to the one petition granted while glossing over the 61 petitions that were dismissed either voluntarily or by the Court for reasons other than default. *See* UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS, 2011 ANNUAL REPORT, http://www.uscourts.cavc.gov/annual_report/. A cursory search on Westlaw for "petition & moot & dismissed & da(aft 9/30/2010 & bef 10/1/2011)" produces 54 results, which shows that these dismissals were almost exclusively based upon mootness because the Secretary responded to the petition by remedying the problem without requiring a Court order. The fact that the Court had to formally order the Secretary to act in only one petition actually demonstrates how much more efficient a tool the petition provides when it is clear that a mistake has been made.

The majority obscures this fact by citing *Costanza v. West*, 12 Vet.App. 133, 134 (1999), for the proposition that an 11-month delay does not amount to an arbitrary refusal to act sufficient to justify mandamus. *Ante* at 3 n.3. However, when the Board refers a matter, an individual need not wait until there has been delay sufficient for the Court to find that VA has arbitrarily refused to act on that matter. Rather, the referral decision can be challenged *immediately*— just as the stay orders in *Ribaudo* and *Ramsey* were—because the Secretary has announced his intention as to how the matter will be processed, thereby eliminating any danger of the Court imputing a determination that does not actually exist.

Although the majority maintains that it is "a red herring" to assert that petitions would provide for faster relief because "none of those dismissals involved a petition to amend a Board decision referring rather than remanding part of a claim," *ante* at 3 n.3, there is no doubt that claimants and their representatives would use the proper tool once the Court guides them in the right direction. *See*, *e.g.*, *Ingram*, *supra* (explaining the proper time and procedures for asserting a pending-unadjudicated-claim argument); *DiCarlo v. Nicholson*, 20 Vet.App. 52, 57 (2006) (explaining that there is no freestanding "finality claim"). Unfortunately, this case not only chooses the wrong path, but also leaves other claimants who have received improper referrals to wonder how to proceed. May a claimant file a petition if no related theory was denied? If so, why are claimants who have a related theory denied treated differently? May a claimant who does not receive a final

_____

to review a Board referral decision; however, once the appellant files a Notice of Appeal with the Court, the appellant may not return to the Board to seek reconsideration. *See Cerullo*, 1 Vet.App. at 197 ("Once an appellate body takes jurisdiction over a claim, the lower tribunal may not consider the same issues.").

Board decision as to any benefit file a direct appeal as to a referral action? If so, on what basis would we have jurisdiction if *Clemons* clearly cannot be applied? Are we without any type of jurisdiction if a referral action cannot be linked to a final decision by the Board? If so, how can it be that some referral errors may be corrected, but not others? This opinion leaves future recipients of referrals wondering whether to file a petition, a direct appeal, or nothing at all. When these future cases arise, the Court will be forced to either review all referral actions through the time-consuming direct appeal process or to treat some claimants differently than others.

Although the issue is not presently before the Court, it appears that this case may well have merited relief through a petition if the Secretary had taken the unusual step of refusing to remedy a well-supported assertion that the claim was not being properly processed. The memorandum decision addressing the Board referral decision is short on details and fails to state what standard of review it applied. *Young v. Shinseki*, No. 09-1621, 2010 WL 2640592 (Vet. App. June 30, 2010). However, it appears that the decision was a straightforward application of *Clemons* to undisputed facts nearly identical to the facts of that case. Hence, it appears likely that the appellant would have demonstrated a clear and indisputable right to the writ if the Secretary had contested the petition. *See Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004).

The majority maintains that its decision does not foreclose the use of petitions to review these types of errors. *Ante* at 3 n.3. This assertion, however, is wholly inaccurate. The Supreme Court has said in no uncertain terms that "it is established that the extraordinary writs cannot be used as substitutes for appeals . . . and *whatever may be done without the writ may not be done with it*." *Bankers Life*, 346 U.S. at 383 (emphasis added). Thus, it is indisputable that by holding that such matters *can* be reviewed on direct appeal, the majority is also holding that they *cannot* be reviewed through a petition.

The majority asserts that it is unclear in my analysis whether "a claimant would be forced to seek mandamus to either correct an error in a Board decision that reflects referral instead of remand or to expedite the decision-making process." *Ante* at 3 n.3. The implicit premise in this assertion is that a Board decision may only be corrected through direct appellate review. However, there is simply no support for this premise. The first step in determining the Court's jurisdiction does not involve looking at the form of the VA action that allegedly contains error. Rather, the first step is to look to the harm asserted and the relief requested by the party seeking review. In this case, the only harm asserted by the appellant in the Board's referral decision was a loss of priority in the claims adjudication process, and the only remedy sought was more expeditious processing. As demonstrated above, the Court's authority to grant such a relief is through its mandamus power and is exclusive to that power because there cannot be any overlap with its direct appellate authority. In exercising its mandamus power, the Court may be required to correct an error in the Board decision in order to provide the remedy requested. In doing so, however, the Court would be correcting an error in a *nonfinal* Board decision.

A proper interpretation of the line that divides the Court's jurisdiction is simple. If a claimant wishes the Court to review whether or not he or she is entitled to a benefit, then that review must wait until there is a Board decision that denies that benefit because such arguments can only be considered on direct appellate review. On the other hand, if the claimant wishes the Court to

16

intervene in the adjudication process to address a matter other than entitlement to a benefit, then the proper method for seeking review is through a petition for mandamus because speeding the process of adjudication aids the Court's direct appellate authority by ensuring that the Secretary does not avoid it through unlawful delay. As the claimant in this case was seeking a Court order for a speedier decision rather than a determination of entitlement, the only proper vehicle is a petition for mandamus.

## IV. ATTORNEY FEE ISSUES

Ultimately, only attorneys can benefit from this decision, and they will do so at the expense of veterans, survivors, and taxpayers. In particular, by finding that the Court has jurisdiction to consider interlocutory matters on direct appeal, rather than through petitions, the majority grants an unearned financial benefit to attorneys filing such appeals in the form of EAJA fees. By endorsing a remedy that takes six times longer on average to resolve than a petition, the majority creates an opportunity for unscrupulous attorneys to draw out litigation to their personal gain. The likelihood of such an abuse is compounded by the fact that the Court routinely awards EAJA fees in direct appeals, when—as here—the Secretary does not contest the application, even when more efficient alternatives exist. Even for ethical attorneys, a direct appeal by its very nature involves a larger investment of time, thereby generating greater costs to taxpayers through EAJA fees than a petition would generate. In short, the majority's decision unnecessarily increases the burden on the public fisc.

This boon to attorneys and increased cost to taxpayers is especially troublesome in light of the directly proportional detriment suffered by claimants. Although attorneys will earn more EAJA fees in a direct appeal than a petition, their clients will lose the benefit of the remedy sought—expedited processing of their claims. Indeed, in some cases, the Court's decision will be moot by the time the full appellate process has been completed. In my view, the Court should not structure the system to pit the financial interests of unscrupulous attorneys against the best interest of their clients, nor should it create a situation where taxpayers are charged more for fewer benefits to claimants. *See Massie v. Shinseki*, 25 Vet.App. 123, 135 (2011) ("Any monetary incentive for attorneys who represent veterans before VA should be oil for the gears of the system, not sand in the works."). Unfortunately, the majority's decision produces just such a result, requiring attorneys to take the slow, costly route to relief.

## V. CONCLUSION

A Board decision referring a matter to an RO for an initial decision is unquestionably an interlocutory action. The Court's jurisdiction to intervene in interlocutory matters is authorized only by the AWA. Moreover, the Court's AWA power is the more effective way to provide prompt relief when the Board errs in referring rather than remanding a matter. Not only is a petition faster, but the Court's jurisdiction over a petition is not dependant on the happenstance of the Board finally deciding a portion of a bifurcated claim in the same decision that it refers another portion of that claim. Indeed, the only beneficiaries of the majority's decision are the attorneys who now have every incentive to forego a motion for reconsideration—the avenue that would be most beneficial to

17

veterans and survivors—and file an appeal with the Court in hopes of recovering EAJA fees for minimal effort.

The memorandum decision in this case erred in exercising direct appellate review on the basis of an NOA filed as to a Board decision that was not "final" as to the matter that the appellant wished to dispute. If relief in such cases is needed, it may be obtained most efficiently through filing a motion for reconsideration at the Board or a petition for a writ of mandamus if the authority of the Court is needed. However, because the Board decision on appeal does not give the Court jurisdiction over the underlying matter in dispute, it lacks the authority either to address the merits of the referred matter or to order the payment of fees for the litigation of a matter that was not properly before the Court.

Nevertheless, by concluding that the Court has jurisdiction to review a Board referral decision, the majority has established the jurisdictional predicate necessary to award EAJA fees in appeals of such decisions. In so doing, the majority has expanded the Court's appellate jurisdiction beyond that envisioned by Congress to include interlocutory matters that have only a tangential connection to a final denial of benefits. *See Briley v. Shinseki*, __ Vet.App. __, __, No. 11-1579, 2012 WL 1353547, at *2 (per curiam order Apr. 19, 2012) (explaining that "federal courts 'possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree'" (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))). This result is all the more egregious because it is claimants that will ultimately suffer from delayed justice while litigation costs increase. Accordingly, I must dissent.

HAGEL, *Judge*, dissenting: Judge Lance has authored a dissent that is fully supported by the law, and I join it without reservation. However, I would like to emphasize that, by concluding that the Board's referral decisions are appealable, the majority has foreclosed future appellants from challenging those decisions via petitions. *See Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953) ("Extraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay and perhaps unnecessary trial.") (citations omitted). As ably pointed out by Judge Lance, the average time for the Court to process an appeal is 10.9 months, whereas the average time to process a petition is only 1.8 months. *See ante* at 14. Consequently, the majority has needlessly injected over 9 months of avoidable delay into the process of ensuring that claims are expeditiously adjudicated by VA.

In any event, at times the essence of disagreement can best be expressed without citing authority, resorting to legal maxims and jargon, or even using Latin. Sometimes it is best to rely instead on just plain common sense. I believe that this case presents such a situation. Therefore, I

18

offer, in my own unconventional way,[8] a less legalistic rationale for disagreeing with the majority's opinion.[9]

> The Judges gathered one day
> bedecked in their robes four did say,
> "Most cases are boring.
> We need something rip-roaring
> to establish a new vérité."
>
> "We must choose a difficult subject,
> our reasoning to which none can object.
> The issue must be obscure,
> but a real problem du jour,
> with an outcome few would suspect."
>
> "Of jurisdiction we don't have enough,
> to get more we know will be tough."
> Then they scrunched up their faces
> and pounded their maces
> and cried, "Where can we find such stuff?!"
>
> Then the Board made an unusual slip,
> referral not remand, the quip.
> It now had arrived,
> the case for which they contrived,
> more power they could use it to grip.
>
> "Speed is required," they pled,
> "Only remand puts vets ahead.."
> But the problem, you see,
> the reverse comes to be
> when the Court sticks its nose in instead.

---

[8]I have considered the propriety of writing my dissent in verse and have concluded that, in this case, poetry is the best method for effectively conveying my disagreement with the majority to the Court's broad array of constituencies. *See* Mary Kate Kearney, *The Propriety of Poetry in Judicial Opinions*, 12 WIDENER L. REV. 597, 604 (2003) (noting that a reason for judicial poetry is to "make the law more accessible to the general public," particularly those without formal legal training).

[9]I have the utmost admiration and respect for each of my fellow Judges: they are professionals all. My dissent is not meant to be a criticism of them, but only an expression of my professional disagreement with the result they have reached in this instance. I trust all who read my statement will take it in that manner. There is clearly hyperbole in some of this writing, but I do not retreat from the moral of the story. Although the result in this case–changing the Board's decision from referral to remand–was clearly correct, it was accomplished by reaching beyond the Court's authority to justify an end and to the detriment of appellants to come. In the future, appellants who wish to correct similar errors must file an appeal here and will thus be subject to all the trappings that come with it.

They then snatched the case from VA.
"Because we can do it," they say.
They acted with speed
and ignored the vet's need,
increasing by six times the delay

The majority wets the vets' ammunition
by retarding their right to petition.
The undeniable effect,
a barrier they erect
to obtaining relief with expedition.

Oh, yes, I have read their tome.
But well enough should be left alone.
Precedent was not heeded,
a final decision once was needed,
but now it need not be shown.

For some the case is of import;
over the din, their voices report
lawyers shouting with glee:
"We can now charge a fee
when before we would come up short!"

The parties deserve commendation
for agreeing to end litigation.
But unlike the majority,
I think we lack the authority
to grant their motion for termination.

But wait!  There are Judges two,
who know the right thing to do
is to keep their hands off,
keep counsel from the trough,
and faster give veterans their due.

Their concern for the law is so real,
their disappointment is hard to conceal.
Into the sunset they ride,
white-hatted Judges side by side,
realizing there will be no appeal.


The ode now draws to a close.

It was not hard to compose.
All the words, you see,
simply came to me,
when the errors I sought to expose.