# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-1421

Eugene P. King, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued October 26, 2005    Decided    January 4, 2006 )

*Robert B. Haemer* of Washington, DC, for the appellant.

*Debra L. Bernal*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Joan E. Moriarty*, Deputy Assistant General Counsel were on the brief, all of Washington, D.C., for the appellee.

Before KASOLD, MOORMAN, and LANCE, *Judges*.

LANCE, *Judge*: The appellant, veteran Eugene P. King, appeals through counsel an April 29, 2003, decision of the Board of Veterans' Appeals (Board) that it was without jurisdiction to review a VA medical center (VAMC) determination that fee-basis outpatient chelation therapy was not an appropriate course of treatment for his medical condition because it is a medical matter and is thus beyond the Board's authority. The parties each filed briefs, and the appellant filed a reply brief. The appellant's brief also asserts a claim under 38 U.S.C. § 1151, alleging disability caused by VA treatment. Both parties filed supplemental briefs in response to a July 13, 2005, order of the Court. Thereafter, the Court heard oral arguments in the case. For the reasons that follow, the Court will vacate the decision of the Board and remand the matter for further proceedings consistent with this decision.

## I. FACTS

The appellant served on active duty in the U.S. Navy from June 1957 to March 1961 and from April 1961 to August 1977. Record (R.) at 2, 9. He is service connected for several disabilities, including hemorrhoids, prostatitis, and blindness in both eyes, and he has had a 100% disability rating since 1993. R. at 859-63.

A November 4, 1996, VA "Report of Contact" indicates the appellant "called to state that he received confirmation from a heavy metal blood test showing there is uranium[,] U238 [,] in his blood. He is currently having more tests done and will submit results when tests are complete." R. at 1828. It is not clear which office of VA received this call, but the report bears a stamp from November 8, 1996, indicating that the report was received by the Washington, D.C., regional office (RO). *Id.* In December 1996, he requested approval for fee-basis outpatient chelation therapy; he asserted that the treatment was necessary because a blood screening conducted by a private physician, Dr. Cameron A. Gillespie, had revealed above normal levels of lead and arsenic. R. at 835-36. The letter further indicated that both results were the "byproduct of . . . [a]tomic [t]esting." *Id.* However, the request did not include any opinion or other statement from Dr. Gillespie in support of the appellant's summary. Although not contained in the record, the letter indicates on its face that it included numerous attachments relating to radiation exposure experience by those involved in military nuclear weapons testing. *Id.* On January 29, 1997, the Hunter Homes McGuire VAMC in Richmond, Virginia, sent a short letter to the appellant informing him that his claim for fee-basis, outpatient chelation treatment was being denied because "it has been determined that VA [f]acilities are available for your medical treatment needs." Supplemental (Supp.) R. at 1. The letter was signed: "Wanda Elam, Chief, Health Benefits Administration." *Id.*

On February 1, 1997, the appellant responded with a letter captioned: "Notice of Disagreement [(NOD)] for denial of FEE BASIS for chelation." R. at 843. In that letter, the appellant asked for an explanation as to "why the VAMC Richmond, Va. has never conducted the test for heavy metals." R. at 844. The appellant also sent a letter on March 1, 1997, that, inter alia, cited *Brown v. Gardner*, 513 U.S. 115 (1994), and asked that his "teeth be rated as service connected" based on exposure to radiation. R. at 1869.

On March 17, 1997, the VAMC sent the appellant another letter, which stated:

> Dr. James K. Schmitt, the Chief of General Internal Medicine and the Chief of our Medical Service have both reviewed your request for chelation therapy. Dr. Schmitt reports that chelation is a somewhat controversial treatment in the medical community. He reports that in your case there appears to be no clinical evidence to indicate heavy metal exposure.
>
> Since chelation therapy is a controversial medical treatment, I am not able to recommend that our Fee Basis Section approve a request for this treatment. You are currently followed by Dr. Milanese in the Medical Clinic. She will be made aware of your concerns and explore any other therapies to assist you. It is my hope that your treatment at our facility meets your every expectation, but I cannot recommend a therapy that my medical staff does not endorse.

Supp. R. at 3. The letter was signed by James W. Dudley, director of the Hunter Holmes McGuire VAMC. *Id.*

On April 8, 1997, the VAMC sent the appellant a letter indicating that his heavy metal levels would be measured when during his next visit. R. at 870. There is no indication in the record that VA subsequently performed such a measurement.

On appeal of the March 17, 1997, VAMC decision, the Board conceded that there "is no dispute that the veteran is generally eligible for fee-basis outpatient treatment . . . and would be eligible for chelation therapy but for the determination that this type of therapy was not, essentially, necessary." R. at 5. The Board observed that the appellant was seeking "authorization of private fee basis outpatient chelation therapy to remove toxic substances *he alleges* to have been exposed to . . . ." R. at 4 (emphasis added). The Board's discussion of the VAMC decision characterizes it as a denial based upon the grounds that the therapy "is considered a controversial therapy in the medical community, and that there was no indication of heavy metal exposure." *Id.* However, the Board's denial of the appellant's claim was based exclusively on the rationale that it did not have jurisdiction because "[t]he opinion that chelation therapy is not an appropriate treatment for this veteran is exclusively a medical matter and beyond the Board's authority." R. at 6 (citing 38 C.F.R. § 20.101(b) (2005)). The Board did not analyze or decide whether the appellant currently has the medical condition that he asserts is in need of treatment.

3

## II. ANALYSIS

### A. Claim for Fee-Basis Chelation Therapy

In this instance, the Board decided that it did not have jurisdiction to review the medical appropriateness of chelation therapy treatment in the case of the appellant based on the limitations on its jurisdiction contained in 38 C.F.R. § 20.101(b). R. at 6. Before the Court, the appellant does not challenge the narrow holding that § 20.101(b) is valid when applicable. Rather, he asserts that the Board failed to address the question of whether it has jurisdiction to review a categorical decision by VHA that a particular type of treatment is never appropriate for a particular type of condition. For the reasons that follow, we will remand this matter to the Board so that it can make specific findings of fact regarding the nature of and support for the appellant's claim and so that it can address in the first instance all questions–including jurisdictional issues–that are raised by the appellant and presented by the facts.

The essential question in this case is one of subject-matter jurisdiction. Our jurisdiction is limited to reviewing decisions of the Board. 38 U.S.C. § 7252(a). It follows that where the Board does not have subject-matter jurisdiction, then neither does the Court. *Yi v. Principi*, 15 Vet.App. 265, 267 (2001) ("The Court lacks appellate jurisdiction over any issue that cannot be the subject of a Board decision."). Of course, this Court always has jurisdiction to assess its own jurisdiction. *See Smith (Irma) v. Brown*, 10 Vet.App. 330, 332 (1997). This includes the power to review a determination by the Board that it lacks jurisdiction over a particular claim. *See Garlejo v. Brown*, 10 Vet.App. 229, 232 (Board did not err in refusing to adjudicate matter as to which no NOD was filed); *Mintz v. Brown*, 6 Vet.App. 277, 281 (1994) ("[T]he Secretary's refusal to exercise jurisdiction . . . clearly presents a case or controversy within the purview of the Court's jurisdiction.").

In addition to our jurisdiction being limited to reviewing decisions of the Board,

> [t]his Court has adopted the jurisdictional restrictions of the case or controversy rubric under Article III of the Constitution of the United States. *See Mokal v. Derwinski*, 1 Vet.App. 12, 13 (1990); *see also Aronson v. Brown*, 7 Vet.App. 153, 155 (1994). When there is no case or controversy, or when a once live case or controversy becomes moot, the Court lacks jurisdiction. *See Bond v. Derwinski*, 2 Vet.App. 376, 377 (1992) (per curiam order).

*Herlehy v. Principi*, 15 Vet.App. 33, 35 (2001). With this in mind, we turn to what–if any–jurisdictional question has been properly presented to the Board and the Court.

4

Under 38 U.S.C. § 1728, veterans who meet listed criteria are eligible for reimbursement for necessary medical treatment received from non-VA providers in certain circumstances. The question of whether a claimant meets the criteria to be eligible for reimbursement under this statute is one that the Board has jurisdiction to review. *Meakin v. West*, 11 Vet.App. 183, 187 (1998). However, to the extent that there is an issue as to the need for the medical treatment in a particular case, the regulation that outlines the Board's jurisdiction provides:

> *Appellate jurisdiction of determinations of the Veterans Health Administration.* The Board's appellate jurisdiction extends to questions of eligibility for hospitalization, outpatient treatment, and nursing home and domiciliary care; for devices such as prostheses, canes, wheelchairs, back braces, orthopedic shoes, and similar appliances; and for other benefits administered by the Veterans Health Administration. **Medical determinations, such as determinations of the need for and appropriateness of specific types of medical care and treatment for an individual, are not adjudicative matters and are beyond the Board's jurisdiction. Typical examples of these issues are whether a particular drug should be prescribed, whether a specific type of physiotherapy should be ordered, and similar judgmental treatment decisions with which an attending physician may be faced**.

38 C.F.R. § 20.101(b) (2004) (bold emphasis added). Neither the appellant nor the Secretary has pointed to any authority regarding the Board's jurisdiction to review the denial of treatment to an eligible veteran for reasons that are not particular to the veteran's medical needs but, instead, are categorical evaluations of a specific treatment. The crux of the appellant's argument is that the Board does have jurisdiction to review such categorical determinations.

We begin our review of the appellant's argument, by noting that the Board–even when it is denying jurisdiction–is required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court. *See* 38 U.S.C. 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). In this case, we conclude that the Board's decision is inadequate to allow for review in this Court.

First, the Board's decision did not determine whether the appellant has a current medical condition that may be in need of treatment. As the appellant conceded at oral argument, the record does not contain a medical opinion explicitly concluding that the appellant has the condition he

claims. While the appellant has submitted what appears to be the results of a blood test for heavy metals (R. at 1830-32), there does not appear to be any determination by the Board or the VHA as to the credibility and weight of this document. Even assuming its authenticity and accuracy, there is no evidence in the record that translates the numerical results into a medical condition that is in need of treatment. As a result, it is not clear that the appellant has established the factual predicate of a medical condition that would necessitate a decision on whether treatment was necessary. Accordingly, the Board's failure to make the necessary findings of fact frustrates our ability to determine whether the jurisdictional issue is ripe for review.

Furthermore, the Board's decision failed to analyze the nature of the decision below. The Board simply cited 38 C.F.R. § 20.101(b) for the proposition that medical determinations are not reviewable, but failed to conduct a critical review of the nature of the decision in this case to support its conclusion that this provision was applicable. The Board did not discuss whether this was a categorical or individualized determination. 38 C.F.R. § 20.101(b) (stating that "the need for and appropriateness of specific types of medical care and treatment *for an individual*" are not reviewable (emphasis added)). Nor did the Board discuss the relationship between the decisionmaker and the appellant. *Id.* (stating "judgmental treatment decisions with which *an attending physician* may be faced" are not reviewable (emphasis added)).

Given that the resolution of the issues raised by the appellant may involve very specific factual determinations regarding the nature of the evidence and the VHA procedures involved that are best for the Board to make in the first instance, the Court concludes that it is premature for the Court to address the jurisdictional issue. *See Hensley v. West*, 212 F.3d 1255, 1263-64 (Fed. Cir. 2000) (court of appeals may remand if it determines that lower tribunal failed to make finding of fact essential to decision); *Wanless v. Principi*, 18 Vet.App. 337, 337 (2004) (per curium order); *see also* 38 U.S.C. § 7104(d)(1); *Sammarco v. Derwinski*, 1 Vet.App. 111, 113-14 (1991) ("Whether the BVA's ultimate conclusions are correct or not, . . . the incomplete nature of the decision below does not permit proper review by this Court."). Furthermore, to the extent that it may be necessary to interpret the precise scope of the 38 U.S.C. § 20.101(b), the Court believes that it is appropriate for the Secretary to address this issue in the first instance. *See Cotant v. Principi*, 17 Vet.App. 116, 129-30 (2003).

6

On remand, the Board should decide whether the appellant has proven that he has a medical condition that may be in need of treatment. If the Board finds that the appellant has proven the existence of a medical condition, it should address the appellant's claim for treatment based upon clear findings as to the nature and authority of the decision being appealed. In particular, the Board should address whether the denial of the appellant's claim was based upon an individualized determination of need in his case or a categorical evaluation of the treatment requested.

## B. Claim for Compensation under 38 U.S.C. § 1151

To the extent that the appellant claims that the Board failed to adjudicate a claim for service connection based on 38 U.S.C. § 1151 (Appellant's Brief (Br.) at 15), he has not established that such a claim was raised below. Only as part of a timely appeal of an adverse Board decision explicitly addressing the claim, or by reference to it in an NOD, or by its having been raised to the Board would this Court have jurisdiction to consider the claim. *See Ledford v. West*, 136 F.3d 776, 779 (Fed. Cir. 1998) (this Court has jurisdiction to review only those claims that were the subject of the Board decision on review); *McCartt v. West*, 12 Vet.App. 164, 167 (1999) (dismissing appealed claim "[b]ecause a final decision has not been issued by the Board with respect to [that] claim"); *cf. Roberson v. Principi*, 17 Vet.App. 135, 138 (2003) (concluding that Court has jurisdiction over issue of pendency of unadjudicated claim for total disability based on individual unemployability because issue was presented to RO and Board).

The appellant argues that he raised a claim under section 1151 in his NOD by citing to *Brown v. Gardner*, *supra*, which addresses such a claim. Appellant's Br. at 15. Section 1151 provides compensation for disabilities caused by VA treatment. 38 U.S.C. § 1151; *Jones v. West*, 12 Vet.App. 460, 464 (1999). However, the NOD cited *Gardner* for the proposition that "[t]he United States Supreme Court determined that disability resulting from personal injury suffered or disease contracted in the line of duty is compensable." R. at 1869. Furthermore, the specific request in the letter was that his "teeth be rated as service connected" based on exposure to radiation in service. *Id.* Indeed, the record indicates that the appellant has consistently claimed that he has numerous conditions caused by exposure to radiation in service, not by VA medical treatment. While the pages in the record cited by appellant (R. at 1620, 1623, 1633) indicate that he has warned VA that if these conditions are not properly treated they could lead to other serious conditions, he has not alleged that

7

he has actually experienced any new or aggravated condition caused by VA treatment. A current medical condition is a necessary element of a claim under 38 U.S.C. § 1151. *Jones*, 12 Vet.App. at 464. The mere fear that such a condition could develop in the future does not satisfy this requirement. Even taking into account VA's duty to sympathetically read pro se pleadings, *see Roberson*, *supra*, the mere reference to *Gardner* is not enough for VA to infer a section 1151 claim where the reference occurred in another context and the record contains no indication that appellant believes he currently has a condition caused by VA medical treatment. Hence, the record does not support the assertion that such a claim was raised to the Board and we have no jurisdiction to review any claim based on 38 U.S.C. § 1151. *See Ledford* and *McCartt*, both *supra*.

Finally, the Court notes that the claim actually raised by the appellant in his NOD where he made the reference to *Gardner*–disability caused by radiation exposure–was adjudicated on December 19, 1997, by the Roanoke, Virginia, RO and denied on the basis that no disabling condition had been shown. R. at 942, 945. However, the appellant makes no argument that that decision is before us, much less that it contains error.

### C. Other arguments

The Court at this time will not address the appellant's other arguments. *See Dunn v. West*, 11 Vet.App. 462, 467 (1998) (stating that remand of appellant's post-traumatic stress disorder claim under one theory moots the remaining theories advanced on appeal (citing *Aronson v. Brown*, 7 Vet.App. 153, 155 (1994))); *see also Mahl v. Principi*, 15 Vet.App. 37, 38 (2001) (holding that where remand is appropriate, the Court need not "analyze and discuss all the other claimed errors that would result in a remedy no broader than a remand"). On remand, the appellant is free to submit additional evidence and argument, including the arguments raised in his briefs to this Court, in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order), and the Board must consider any such evidence or argument submitted. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Board shall proceed expeditiously, in accordance with 38 U.S.C. §§ 5109B, 7112 (West Supp. 2005) (requiring Secretary to provide for "expeditious treatment" of claims remanded by Board or Court).

8

## III. CONCLUSION

Accordingly, the appellant's claim for fee-basis chelation therapy is REMANDED to the Board for further proceedings consistent with this opinion and the Board's decision on this issue is VACATED.  The appellant's claim under 38 U.S.C. § 1151 is DISMISSED.