# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-6129

JOSE F. RIVERA-COLON, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 12, 2021                                    Decided April 11, 2022)

*Kenneth M. Carpenter*, of Topeka, Kansas, with whom *Victoria R. Tamayo*, of Largo, Florida, was on the brief, for the appellant.

*Carson M. Garand*, with whom *Richard A. Sauber*, General Counsel; *Mary Ann Flynn*, Chief Counsel; *Christopher W. Wallace*, Deputy Chief Counsel; and *Aaron D. Parker*, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and PIETSCH and LAURER, *Judges*.

BARTLEY, *Chief Judge*: Veteran Jose F. Rivera-Colon appeals through counsel a June 12, 2019, Board of Veterans' Appeals (Board) decision denying entitlement to an evaluation in excess of 10% for service-connected gastritis. Record (R.) at 5-16.[1] Specifically, he asserts that the Board erred because it did not consider whether his gastritis should be referred for extraschedular consideration under 38 C.F.R. § 3.321(b). Appellant's Br. at 3. This matter was referred to a panel of the Court, with oral argument, to address whether, and under what circumstances, extraschedular consideration is available for gastritis evaluated under 38 C.F.R. § 4.114, diagnostic code (DC) 7307. Because the Board failed to define a key term used to describe impairment under

---

[1] In the same decision, the Board remanded the issues of entitlement to service connection for a bladder disability and to a compensable evaluation for right ear hearing loss. R. at 12-16. Because a remand is not a final decision of the Board subject to judicial review, the Court does not have jurisdiction to consider those issues at this time. *See Howard v. Gober*, 220 F.3d 1341, 1334 (Fed. Cir. 2000); *Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order); 38 C.F.R. § 20.1100(b) (2021). In addition, the Board declined to reopen a previously denied claim for service connection for left ear hearing loss. R. at 10-12. Because Mr. Rivera-Colon has not challenged that portion of the Board decision, the appeal as to that matter will be dismissed. *See Pederson v. McDonald*, 27 Vet.App. 276, 281-86 (2015) (en banc) (declining to review the merits of an issue not argued and dismissing that portion of the appeal); *Cacciola v. Gibson*, 27 Vet.App. 45, 48 (2014) (same); *see also* Appellant's Brief (Br.) at 1, n.1 (stating that he "no longer wishes to pursue this issue").

DC 7307, judicial review is frustrated, and the Court cannot determine whether referral for extraschedular consideration was warranted in this matter. Consequently, the Court will set aside the portion of the June 2019 Board decision denying entitlement to a gastritis evaluation in excess of 10% and remand the matter for further readjudication consistent with this decision. The balance of the appeal will be dismissed.

## I. FACTS

Veteran Jose F. Rivera-Colon served in the U.S. Army from August 1979 to August 1982, and on active duty with the U.S. Army Reserve from June to November 1991 and from May to September 1994. R. at 9013, 9056, 10,912.

In June 2014, Mr. Rivera-Colon filed a claim seeking service connection for gastritis as secondary to medication taken to treat other service-connected conditions. R. at 8756-57. In November 2015, and after development not at issue here, a VA regional office (RO) granted a 10% initial evaluation for gastritis under DC 7307, based on evidence of a "sub-mucosal nodule." R. at 8379. In August 2016, he filed a supplemental claim seeking, among other things, an increased gastritis evaluation. R. at 7373.

In November 2016, Mr. Rivera-Colon underwent a VA stomach and duodenal conditions examination. R. at 7331-33. The examiner indicated that Mr. Rivera-Colon's symptoms were not severe and included pronounced, continuous abdominal pain occurring at least monthly and mild nausea occurring more than four times per year and lasting less than one day. R. at 7332. The examiner indicated that Mr. Rivera-Colon did not have incapacitating episodes related to any stomach or duodenal condition and that his gastritis did not impact his ability to work. R. at 7332-33. The examiner characterized an August 2015 VA endoscopy report as showing "mild gastritis." R. at 7333.

In December 2016, the RO continued the 10% evaluation for gastritis. R. at 7314-17. Mr. Rivera-Colon filed a Notice of Disagreement in January 2017. R. at 7194-95.

In June 2017, while seeking VA treatment for a separate condition, he reported that he required treatment at an emergency room the previous day because of "acute diarrhea and partial dehydration." R. at 4826.

2

In November 2017, the RO issued a Statement of the Case (SOC), continuing the assigned 10% gastritis evaluation. R. at 7015-49. Mr. Rivera-Colon filed his Substantive Appeal the following month. R. at 7009.

In August 2018, Mr. Rivera-Colon underwent another VA examination. R. at 4494-500. He reported persistent heartburn, as well as indigestion and regurgitation. R. at 4494. The examiner indicated that Mr. Rivera-Colon continued to experience the same symptoms as in November 2016, with the same frequency, and at the same intensity. R. at 4495-96. In September 2018, the RO issued a Supplemental SOC (SSOC), continuing the assigned 10% evaluation. R. at 4391-401.

In September 2018, Mr. Rivera-Colon submitted a stomach and duodenal conditions disability benefits questionnaire (DBQ) completed by a VA physician in August 2018. R. at 3132-36. The VA physician diagnosed gastroesophageal reflux disease (GERD), gastric polyp, hiatal hernia, and gastritis with a small submucosal nodule. R. at 3132. The VA physician indicated that Mr. Rivera-Colon experienced recurring episodes of stomach or duodenal symptoms that, while not severe, included periodic abdominal pain that is unrelieved by standard ulcer therapy, nausea, and vomiting, all of which occur at least four times per year and last up to nine days per episode; periodic hematemesis (vomiting of blood, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 822 (33d ed. 2020)) occurring three times per year and lasting less than a day; and a 22-pound weight loss from baseline. R. at 3133. The VA physician indicated that Mr. Rivera-Colon has incapacitating episodes as a result of his condition and had to stop working because of his symptoms, including nausea and vomiting. R. at 3134-35. In October 2018, the RO issued an SSOC continuing the 10% evaluation. R. at 3114-29.

In the June 2019 Board decision on appeal, the Board found that a higher schedular evaluation was not warranted because there was no evidence of multiple small eroded or ulcerated areas and symptoms, as contemplated by a 30% evaluation under DC 7307, or severe hemorrhages or large ulcerated or eroded areas, as contemplated by a 60% evaluation under that DC. R. at 9. The Board also considered evaluating the gastritis under DC 7346, for hiatal hernia, but found that there was no evidence of persistently recurrent epigastric distress with substernal or arm or shoulder pain, such as is required for a 30% evaluation under that DC, or material weight loss, hematemesis, or melena (blood in the feces, *see* DORLAND'S at 1110) with moderate anemia, or another symptom combination productive of severe impairment of health, as is required for a 60%

evaluation. *Id*. In denying the claim, the Board did not address whether referral for extraschedular consideration was warranted or consider whether to apply any DCs other than 7307 and 7346. *See* R. at 7-9. This appeal followed.

## II. ARGUMENTS

### A. Initial Arguments

In his brief, Mr. Rivera-Colon argues that the Board's reasons or bases are inadequate because they do not address whether referral for extraschedular consideration is warranted. Appellant's Br. at 6. He states that the record reflects "exceptional symptoms, which did not fit any diagnostic criteria," such as pain unrelieved by standard ulcer therapy, emergency room treatment for diarrhea, and symptoms of such severity that he can no longer work. *Id*. at 5 (citing R. at 3133-35, 4826).

The Secretary counters that the Board need not have addressed referral for extraschedular consideration because "the functional effects of [Mr. Rivera-Colon's] gastritis disability did not reasonably raise the issue." Secretary's Br. at 5. The Secretary asserts that the record reflects "normal complaints" of gastritis symptoms, *id*. at 7, because, among other things, the symptoms claimed as exceptional "are all listed as usual symptoms on [the] August 2018 DBQ exam[ination]," *id*. at 8. Therefore, the Secretary contends, they fall within the scope of a schedular evaluation under DC 7307. *Id*. The Secretary asserts that Mr. Rivera-Colon merely disagrees with the Board's weighing of the evidence and has not demonstrated clear error in the June 2019 decision. *Id*.

### B. DC 7307 and Supplemental Briefing

Under DC 7307, chronic gastritis "with small nodular lesions, and symptoms," warrants a 10% evaluation. 38 C.F.R. § 4.114 (2021). Chronic gastritis "with multiple small eroded or ulcerated areas, and symptoms," warrants a 30% evaluation. *Id*. Chronic gastritis "with severe hemorrhages, or large ulcerated or eroded areas" warrants a 60% evaluation, which is the maximum schedular evaluation available under DC 7307. *Id*. The introduction to § 4.114 specifies that

> [r]atings under diagnostic codes 7301 to 7329, inclusive, 7331, 7342, and 7345 to 7348 inclusive will not be combined with each other. A single evaluation will be assigned under the diagnostic code which reflects the predominant disability

4

picture, with elevation to the next higher evaluation where the severity of the overall disability warrants such elevation.

*Id*.

On September 2, 2021, the Court ordered the parties to submit supplemental memoranda of law to address, among other things, whether the phrase "and symptoms," as used in the rating criteria for 10% and 30% evaluations under DC 7307, was so all-encompassing as to foreclose any consideration of an extraschedular evaluation and, if not, how entitlement to an extraschedular evaluation should be determined.

In his supplemental memorandum of law, Mr. Rivera-Colon asserts, for the first time, that the "more basic question" at issue is whether a recent revision to 38 C.F.R. § 3.321(b)(1) is a substantive regulatory change undermining the continuing applicability of *Thun v. Peake*, 22 Vet.App. 111 (2008), *aff'd sub nom. Thun v. Shinseki*, 572 F.3d 366 (Fed. Cir. 2009), and its progeny. Appellant's Supplemental (Supp.) Memorandum of Law (MOL) at 6. Before January 7, 2018, "the Under Secretary for Benefits or the Director, Compensation Service, *upon field station submission*, [was] authorized to approve" extraschedular evaluations. 38 C.F.R. § 3.321(b)(1) (2017) (emphasis added). The revised version of the regulation states that "the Director of Compensation Service or his or her delegate is authorized to approve" extraschedular evaluations. 38 C.F.R. § 3.321(b)(1) (2021). Mr. Rivera-Colon argues that, by removing the phrase "upon field station submission" from the regulation, the Secretary intended that "extraschedular consideration is now within the exclusive purview of the Director without a threshold inquiry by the regional office or the Board and without a referral from either." Appellant's Supp. MOL at 7. In other words, he asserts that neither the RO nor the Board have any role to play in determining whether extraschedular evaluations are warranted because the Secretary has "unambiguously and exclusively delegated the full responsibility to the Director." *Id*. at 9. Therefore, he argues, *Thun* and its progeny are no longer controlling precedent. *Id*. at 6-7.

As for the question posed in the Court's September 2, 2021, order—whether an extraschedular evaluation is available when gastritis is evaluated at 10% or 30%—Mr. Rivera-Colon notes that DC 7307 "does not define the term 'and symptoms,'" *id*. at 4, and asserts that the rating schedule is inadequate to rate his specific gastritis disability, *id*. at 5.

The Secretary agrees that "[t]he assignment of an extraschedular evaluation is possible when a schedular 10% or 30% evaluation is assigned under DC 7307." Secretary's Supp. MOL at 2. As for the type and severity of symptoms that would warrant an extraschedular evaluation, the

Secretary hypothesizes that "the Board could determine which symptoms are typically associated with gastritis by reviewing the DBQs at issue in this matter," thereby determining whether Mr. Rivera-Colon's symptoms are typical or exceptional. *Id*. at 4-5.

On September 29, 2021, the Court ordered the Secretary to respond to Mr. Rivera-Colon's argument regarding the revised version of § 3.321(b)(1) and the continued applicability of *Thun* and its progeny. In an October 2021 response, the Secretary noted that nothing in the revision to § 3.321(b)(1) addresses "how the issue of an extraschedular [evaluation] comes before the Director" and, therefore, neither requires VA to alter its current referral process nor invalidates the *Thun* line of cases. October Response at 2. The Secretary supports this argument with citation to VA's comments to the final rule, which expressly contemplate "that the ROs 'should make these fact-intensive decisions in the first instance.'" *Id*. at 3 (quoting Extra-Schedular Evaluations for Individual Disabilities, 82 Fed. Reg. 57,830, 57,833 (Dec. 8, 2017). The Secretary further notes that "*in Long v. Wilkie*, the en banc Court considered the amended version of § 3.321(b)(1) when articulating when referral for extraschedular consideration is warranted." *Id*. at 4 (citing 33 Vet.App. 167, 173 (2020), *appeal docketed sub nom. Long v. McDonough*, No. 21-1669 (Fed. Cir. Feb. 19, 2021)).

### III. ANALYSIS

VA's schedule of disability ratings is based on average impairment in earning capacity in civil occupations resulting from disability. 38 U.S.C. § 1155; 38 C.F.R. § 3.321(a) (2021). However, in the "exceptional case" where the schedular evaluation is inadequate, VA is authorized to approve an extraschedular evaluation. 38 C.F.R. § 3.321(b)(1).

The "governing norm" in these exceptional cases is a finding that the veteran's disability picture is so exceptional or unusual because of factors such as marked interference with employment or frequent periods of hospitalization that it is impractical to apply the regular schedular standards. *Id*. Thus, the first step in determining whether referral for extraschedular consideration is warranted is determining whether the evidence "presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate." *Thun*, 22 Vet.App. at 115; *see Long*, 33 Vet.App. at 173 (stating that the proper test for assessing exceptionality remained the "first step" set forth in *Thun*, 22 Vet.App. at 115). That in turn, and as relevant in Mr. Rivera-Colon's case, obliges the Board to compare "the level of

severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability." *Thun*, 22 Vet.App. at 115.

If the first requirement is satisfied, the Board must then determine whether the veteran's exceptional disability picture exhibits other related factors such as "'marked interference with employment' or 'frequent periods of hospitalization.'" *Thun*, 22 Vet.App. at 116 (quoting 38 C.F.R. § 3.321(b)(1)). "[T]he first Thun element compares a claimant's symptoms to the rating criteria, while the second addresses the resulting effects of those symptoms." *Yancy v. McDonald*, 27 Vet.App. 484, 494 (2016). If both these inquiries are answered in the affirmative, the Board must refer the matter to the Under Secretary for Benefits or the Compensation Service Director for the third inquiry, that is, a determination of whether, "[t]o accord justice," the veteran's disability picture requires the assignment of an extraschedular evaluation. *Thun*, 22 Vet.App. at 111.

A. The Court Declines to Consider the Late-Raised *Thun* Argument

As a preliminary matter, the Court must address Mr. Rivera-Colon's assertion, raised for the first time in response to the Court's supplemental briefing order, that *Thun* and its progeny no longer apply after the revision to 38 C.F.R. § 3.321(b)(1) that became effective on January 7, 2018. This is so because if, as Mr. Rivera-Colon asserts, sole authority in such matters now rests with the Director and his or her delegate, then the Board no longer has jurisdiction over extraschedular evaluations and, by extension, the Court no longer has jurisdiction to review the Board's alleged failure to refer a matter for extraschedular evaluation. *See* 38 U.S.C. § 7252(a) (stating that our jurisdiction is limited to reviewing decisions of the Board); *see also King v. Nicholson*, 19 Vet.App. 406, 409 (2006) ("It follows that where the Board does not have subject-matter jurisdiction, then neither does the Court."). And, because the only argument that Mr. Rivera-Colon raises on appeal is with respect to the Board's alleged failure to address a reasonably raised entitlement to referral for extraschedular consideration, if the Board, and by extension the Court, lacks subject-matter jurisdiction, the Court will have no option but to dismiss his appeal. *See Briley v. Shinseki*, 25 Vet.App. 196, 196 (2012) ("[A] matter before this Court that does not present a live case or controversy must be dismissed for a lack of jurisdiction.").

The Court declines to review this argument because it was first raised in supplemental briefing ordered after the matter was referred for panel consideration. The Court has consistently discouraged parties from raising new arguments after the initial briefing. *See Carbino v. Gober*, 10 Vet.App. 507, 511 (1997) (declining to review argument first raised in appellant's reply brief),

*aff'd sub nom. Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999) ("[I]mproper or late presentation of an issue or argument . . . ordinarily should not be considered."); *see also Untalan v. Nicholson*, 20 Vet.App. 467, 471 (2006); *Fugere v. Derwinski*, 1 Vet.App. 103, 105 (1990). Accordingly, the Court declines to consider this belated argument.

B. Judicial Review Is Frustrated Because a Critical Term Is Undefined

As noted above, a 10% schedular evaluation is assigned under DC 7307 for chronic gastritis "with small nodular lesions, and symptoms." 38 C.F.R. § 4.114. To recap the parties' arguments, Mr. Rivera-Colon asserts that the manner in which his gastritis symptoms manifest is exceptional and exceeds what is contemplated by a 10% schedular evaluation. He asserts that, because those exceptional symptoms are documented as markedly interfering with his employability (by rendering him unemployable), the record reasonably raised the matter of entitlement to referral for extraschedular evaluation such that the Board erred in not addressing the matter in its statement of reasons or bases. The Secretary counters that Mr. Rivera-Colon's gastritis symptoms are within the scope of the usual symptoms associated with chronic gastritis with nodules and, therefore, are not exceptional. And the Secretary argues that, because Mr. Rivera-Colon does not have exceptional gastritis symptoms, the Board was not required to discuss referral for extraschedular consideration.

Resolving this dispute requires this Court to consider what the term "symptoms" means with respect to a schedular evaluation under DC 7307. In its supplemental briefing order, the Court asked the parties to address whether the term "symptoms" as used in DC 7307 was so broad as to encompass all possible symptoms and manifestations and foreclose the assignment of an extraschedular evaluation, rendering § 3.321(b) inapplicable as to that DC. The Secretary responds that "DC 7307 does not preclude an assignment of an extraschedular evaluation" and that "[w]hether an extraschedular evaluation is warranted should simply follow the typical analysis under 38 C.F.R. § 3.321(b) and *Thun*, as well as the substantial caselaw on this topic that is sufficient to address this issue." Secretary's Supp. MOL at 3. Mr. Rivera-Colon concurs that "symptoms," as used in DC 7307, does not foreclose the possibility of an extraschedular evaluation. Appellant's Supp. MOL at 2. Thus although, as discussed below, the full scope of the term "symptoms" is not understood, there is no dispute among the parties that it is not all-encompassing and that extraschedular evaluations are available under DC 7307 when warranted. In other words, neither party argues that, to resolve this matter, the Court must interpret whether

8

DC 7307 permits extraschedular evaluations. Therefore, and to that limited extent, the Court accepts the parties' assessment that the term "symptoms" is not so broad as to encompass all possible symptoms and that extraschedular evaluations are permitted, when warranted, for gastritis evaluated at any schedular level under DC 7307.[2]

As relevant to Mr. Rivera-Colon's appeal, the Secretary asserts that the term "symptoms" as used in DC 7307 is "broad language" that "encompasses the usual or typical symptoms caused by or associated with a claimant's gastritis." Secretary's Supp. MOL at 2. The Secretary declines to "generally speculate as to the type of symptoms under DC 7307 and their severity that may determine whether an extraschedular evaluation is warranted," *id*. at 4, but suggests that "the Board could determine which symptoms are typically associated with gastritis by reviewing the DBQs at issue in this matter," *id*. at 4-5. The Secretary further asserts that Mr. Rivera-Colon's symptoms "are all listed as usual symptoms on [his] August 2018 DBQ exam[ination]." Secretary's Br. at 8 (citing R. at 3133).

There are two primary problems with the Secretary's assertions. First, the Board did not explain how it determined what the usual symptoms of gastritis are. *See* OA at 28:07-28:13, *Rivera-Colon v. McDonough*, U.S. Vet. App. No. 19-6129 (oral argument held October 12, 2021) (conceding that the Board did not discuss or explain the typical or usual symptoms of gastritis). In fact, although the Board listed the symptoms reported during VA treatment, on VA examination reports, and on the August 2018 DBQ completed by a VA physician, its subsequent analysis was limited to whether Mr. Rivera-Colon demonstrated the small eroded or ulcerated areas or severe hemorrhages necessary—in addition to "symptoms"—for a higher *schedular* evaluation under DC 7307 or whether he had the enumerated symptoms necessary for a higher *schedular* evaluation under DC 7346, for hiatal hernia. R. at 8-9. Moreover, the Board did not explain what the usual symptoms of gastritis are nor did it explain what about gastritis symptoms generally—or Mr. Rivera-Colon's gastritis symptoms in particular—led it to consider evaluating the condition as a hiatal hernia under DC 7346, but no other DCs. Thus, to the extent that the Secretary suggests that the Board *could* have looked to the standard DBQ form to determine what the typical symptoms of gastritis are and whether Mr. Rivera-Colon's gastritis symptoms fall within that penumbra, it is not apparent that the Board did so. Consequently, the Secretary's suggestion is nothing more than

---

[2] Indeed, to hold otherwise would render § 3.321(b)(1) superfluous with respect to DC 7307, an interpretation this Court must avoid. *See Jensen v. Shulkin*, 29 Vet.App. 66, 74 (2017).

a post-hoc rationalization that the Court cannot consider. *See In re Lee*, 277 F.3d 1338, 1345-46 (Fed. Cir. 2002) ("'[C]ourts may not accept appellate counsel's post-hoc rationalizations for agency action.'"); *Evans v. Shinseki*, 25 Vet.App. 7, 16 (2011) ("[I]t is the Board that is required to provide a complete statement of reasons or bases, and the Secretary cannot make up for its failure to do so.").

Second, the Court has previously cautioned that "[i]t is VA's responsibility to define the terms contained within its regulations." *Ortiz-Valles v. McDonald*, 28 Vet.App. 65, 72 (2016); *see also Ray v. Wilkie*, 31 Vet.App. 58, 62 (2019) (holding "that VA's refusal to define key terms in [a regulation] frustrates judicial review"); *Johnson v. Wilkie*, 30 Vet.App. 245, 247 (2018) (holding that judicial review was frustrated because the Board failed to define terms in the DC for migraines); *Cantrell v. Shulkin*, 28 Vet.App. 382, 392-93 (2017) (holding that it is VA's responsibility to define what is meant by employment "in a protected environment"). The Court concludes that the landscape here is no different.

The Secretary avers that DC 7307 "necessarily contemplates the usual and typical symptoms and effects commonly associated with" gastritis because "each diagnostic code reasonably contains the full range of symptoms usually associated with or caused by the disability." Secretary's Supp. MOL at 5 (citing *Long*, 33 Vet.App. at 173). By implication, then, symptoms that are unusual or atypical for gastritis may warrant referral for consideration of an extraschedular evaluation. The problem in Mr. Rivera-Colon's case is that the Court has no way of knowing what those usual or typical symptoms of gastritis are because VA has not defined them.

The Secretary's suggestion that the Court look to the symptoms listed on the August 2018 DBQ does not resolve this quandary because the DBQ is, on its face, not specific to gastritis. *See* R. at 3132 (identifying DBQ as applicable to stomach and duodenum conditions, generally). While the symptoms listed, including any identified as present in Mr. Rivera-Colon's case, may be usual or typical within the broad spectrum of stomach or duodenum conditions, there is no indication on the form as to which symptoms are usual or typical for gastritis specifically. In fact, gastritis is not one of the specific stomach or duodenum conditions enumerated in "Section I" of the DBQ, *id.*, but is listed among several "other conditions" under "Section V," R. at 3134, which falls after "Section III" listing the signs and symptoms of stomach and duodenum conditions, R. at 3133. Thus, based on the structure of the DBQ, it is not clear that the signs and symptoms identified in Section III pertain to the "other conditions," including gastritis, that are not enumerated until

Section V. Accordingly, the Court is not persuaded by the Secretary's suggestion that the symptoms identified in Section III should be construed as the usual and typical symptoms of gastritis contemplated by the schedular rating criteria under DC 7307.

And as to Mr. Rivera-Colon's gastritis disability, the picture is further complicated because the VA physician diagnosed Mr. Rivera-Colon with several additional disabilities, including GERD, gastric polyp, and hiatal hernia, R. at 3132, but did not specify which symptoms were associated with which diagnoses. And although the Board found that all identified signs and symptoms were "relevant" to its analysis, R. at 9, it did not explain whether that was so because the symptoms were all attributed to gastritis or because all the diagnosed conditions were, in some manner, associated with the service-connected gastritis disability (and, if so, whether Mr. Rivera-Colon was entitled to a higher evaluation based on the rating criteria for one of the other diagnosed conditions). Regardless, neither the structure of the DBQ itself, nor the way it was completed by the VA physician, nor how it was evaluated by the Board supports the Secretary's suggestion that the symptoms identified in Section III of the stomach and duodenum conditions DBQ should be considered the usual and typical symptoms associated with gastritis for the purpose of determining whether referral for an extraschedular evaluation is warranted based on the criteria in DC 7307.

Ultimately, although the Secretary confirms that extraschedular evaluations may be available for conditions evaluated under DC 7307, and that the term "symptoms" as used in the 10% and 30% schedular evaluations refers to the usual or typical symptoms associated with gastritis, VA has not defined what those usual and typical symptoms of gastritis are or whether 10% and 30% evaluations contemplate different symptoms. And the Board did not explain in its reasons or bases how it reached its implicit finding that Mr. Rivera-Colon's gastritis symptoms were not exceptional. Consequently, judicial review is frustrated, and the Court is unable to determine whether, as Mr. Rivera-Colon asserts, the record reasonably raised the question of entitlement to referral for extraschedular consideration. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). Accordingly, the matter will be remanded. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is the appropriate remedy "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

11

Per *Quirin*, the Court will provide additional guidance to the Board. *See Quirin v. Shinseki*, 22 Vet.App. 390, 396 (2009). Because the term "symptoms" was not defined for the purpose of DC 7307, the DC assigned for Mr. Rivera-Colon's gastritis, he did not receive notice as to what was encompassed by—or excluded from—the 10% schedular evaluation assigned. If, on remand, the Board determines that certain symptoms (or other diagnoses, on a secondary basis) are attributable to Mr. Rivera-Colon's service-connected gastritis, and those symptoms or diagnoses would entitle him to a higher schedular evaluation under DC 7307 or another DC, it must consider whether a higher schedular evaluation is warranted.[3] *See Morgan v. Wilkie*, 31 Vet.App. 162, 168 (2019) ("VA's duty to maximize benefits requires it to first exhaust all schedular alternatives for rating a disability before the extraschedular analysis is triggered.").

## IV. CONCLUSION

Upon consideration of the foregoing, the portion of the June 12, 2019, Board decision denying entitlement to an evaluation in excess of 10% for service-connected gastritis is SET ASIDE, and the matter is REMANDED for further development, if necessary, and readjudication consistent with this decision. The remainder of the Board decision is DISMISSED.

---

[3] The Court notes that, under a proposed revision to 38 C.F.R. § 4.114, gastritis would be evaluated as peptic ulcer disease under a retitled DC 7304 that would, among other things, assign a minimum 20% evaluation for episodes of abdominal pain, nausea, or vomiting that last for at least three consecutive days and are managed by daily prescribed medication. 87 Fed.Reg. 1522-01 (Jan. 11, 2022).